Thank you. We'll call 19-5071, Strain v. Regalado. You may proceed, Mr. Blakemore. Good morning. My name is Bob Blakemore and I represent the appellant in this case, Faye Strain, who's the administrator of the estate of Tommy Pratt, her son. This is a case involving an appeal of a denial or a grant of a motion to dismiss under 12b-6. As alleged in our complaint, for a period of five to six days, Mr. Pratt was subjected to unconstitutional conditions of confinement at the Tulsa County Jail. As alleged, on numerous occasions during his incarceration, Mr. Pratt suffered post-traumatic stress disorder injury, tremens, and head trauma or brain injury, emergent and life-threatening conditions. As we allege, it would have been obvious even to a layperson that Mr. Pratt's emergent and life-threatening condition could not be properly or adequately managed in a correctional setting and that he required immediate hospitalization. Yet, even after Mr. Pratt began hallucinating, profusely sweating, continuously vomiting, showing signs of an acute panic state, harming himself, sustaining a head injury, the medical staff at the jail refused to send him to a hospital in violation of Armor Correctional Service's own policies and clinical protocols. His vital signs were never taken for three days in violation of policy and a seizure precaution order. Mr. Pratt did not receive transport to an emergency room until he was pulseless and completely non-responsive. By then, it was far too late. The damage had been done and this tragic result would not have occurred but for deliberate indifference. Plaintiff has brought constitutional claims that are eminently plausible and should not have been dismissed. We allege that Mr. Pratt was a pretrial detainee. As such, plaintiff's allegations of deliberate indifference to Mr. Pratt's serious medical needs must be analyzed under the 14th Amendment. It is now established that the traditional subjective mens rea analysis no longer applies in cases such as this involving pretrial detainees. Rather, the 14th Amendment rights of pretrial detainees like Mr. Pratt should be analyzed under an objective standard of liability. This Kingsley made clear that the subjective standard applied in eighth amendment cases does not carry over to analogous challenges alleging due process violations. To the contrary, Kingsley, yes. Counsel, this is Judge Hart. I have a couple questions. One I hope is not too stupid but there are two terms that have been used for different treatments. The other is alcohol withdrawal. And the defendant's position, as I understand it, is this was a case of alcohol withdrawal and it was treated properly. So my question is, is there a difference between the two in your mind? Is it I ask this because perhaps when an inmate is having DTs and everyone agrees, he or she should be taken to the hospital, to the emergency room. But if it's alcohol withdrawal, there are other protocols giving a valium, things like that. And that's okay to do in that circumstance. Can you clear up my mind on that issue? Yes, sir. I mean, obviously I'm not a medical expert, but my understanding is that delirium tremens is along the continuum of alcohol withdrawal and it's an emergent condition and its symptoms include continuous hallucinations, profuse sweating, fever, elevated heart rate, increased blood pressure. Counsel, you're saying that it was clear on the record that that was present here for several days? Yes, sir. Or it's not something that developed over time, but for several days it was clear that your client was suffering from hallucinations, profuse sweating, etc.? By the early morning hours of the 14th, December 14th, it was clear. And that's based on the notations of Nurse Dean at approximately 2 o'clock a.m. on December 14th, 2015, where she documents constant nausea, frequent dry heaves and vomiting, severe tremors, acute panic state as seen in severe delirium or acute schizophrenic reactions, drenching sweats, continuous hallucinations. Let me ask you a question about Kingsley. There may be a distinction between 14th Amendment claims that before Kingsley required an intent, such as an intent to punish, and Kingsley has said there's an objective standard for excessive force cases, for example. Here's a standard before Kingsley would have been deliberate indifference. Are you aware of, this is for purposes of determining qualified immunity, are you aware of any cases by this circuit or the Supreme Court that apply Kingsley standard, in other words, no longer a subjective standard in deliberate indifference type cases? No. The most analogous that we have is the Colbruno decision, which is a 2019 decision from this court involving outside the context of excessive force, where the objective Kingsley standard was applied, which in my opinion vitiates the argument that Kingsley is to be limited only to excessive force cases. But one other, you mentioned qualified immunity, now there is no qualified immunity defense in this case or assertion as the underlying violations were committed by medical staff that's employed by a private medical provider, and the only claim against the sheriff is in his official capacity. So there's actually no, there Judge Matheson, do you have any questions? Yes, thank you, counsel. Looking at the individual ascendants, where, I'm looking at your complaint and I think you just quoted about tremors, acute pain, and so forth, this assessment indicated that Mr. Pratt was suffering from delirium tremens. Have you adequately alleged, however, that Nurse Dean knew that Mr. Pratt was experiencing delirium tremens? Yes, and what I've alleged, I believe, is that under the protocol there's a clinical protocol that Armour used that would have indicated that this was delirium tremens. I think it would have been part of her training where she should have, she should have known that. And those symptoms, those severe symptoms are pretty clearly beyond just a typical case of alcohol withdrawal. The allegations about Nurse Dean concerned, as you pointed out, early morning hours, 2 o'clock a.m. on December 14th, and then she didn't contact the doctor according to the complaint or arrange to have him go to the hospital. And then Dr. McElroy examines him the next morning at, I think, around 10, 15, 10.30. Given that passage of time, why wouldn't that undercut your claim that there was an emergent situation when Nurse Dean did her assessment? Well, I think he continued, he was continuing to suffer and exhibit these symptoms. It was an emergent condition. He continued to exhibit these symptoms throughout that eight-hour period and wasn't seen by Dr. McElroy until eight o'clock at the point that Dr. McElroy saw him. It had been reported that not only was he continuing to exhibit the symptoms that Nurse Dean observed, but he had sustained an injury to his head, either self-sustained or through a seizure or falling. And there was a pool of blood underneath the sink, which, as we allege, is evidence that he was continuing to deteriorate and evidence that he possibly had a brain injury or head trauma. And there was no, he wasn't sent to the hospital, he wasn't provided with adequate care in light of the obvious emergent situation. Didn't Dr. McElroy, though, and again, we're working off your complaint because we're at a 12B6 situation, but Dr. McElroy saw Mr. Pratt, checked the medications. It wasn't clear to me whether Dr. McElroy changed his medications, but he didn't send him to the hospital, but he was checked, he was given a farmer deliberate indifference test. Why does that show deliberate indifference? It may not be standard of care, it may be negligent, but how is it deliberate indifference? Well, it's just, it's so obviously inadequate. And also, we don't concede that, we don't concede that Mr. Pratt was provided with the Valium or Librium, but it's our position that to give just Valium to a man who has a pool of blood under a sink, sustained a head injury, had been hallucinating, profusely sweating, continuously vomiting, to just give that man a Valium and essentially call it a day, it's so obviously inadequate that it can rise to the level of deliberate indifference. And the case that we cite for that is, and the brief is Oxendine versus Kaplan, which was actually... Counselor, let me interrupt. I've totally... There's very little time left for Judge Carson to answer questions. We'll expand the time so he can pursue whatever he wishes, but Judge Carson, do you have any questions? Thank you, Judge Hartz. I do. My question's about your position on Kingsley, and I'm just wondering, if we went to a pure objective standard, how does that not put us in a situation where a mere negligence claim could survive? Well, I think that, of course, the court could adopt a negligence standard, but if you look at the other courts that have used a reasonable... The Ninth Circuit uses a reasonable practitioner standard, the Second Circuit and Darnell uses a standard of recklessly failed to act with reasonable care to mitigate a risk that the official knew or should have known of, which is actually similar to a deliberate indifference standard that was adopted by the Tenth Circuit in the context of municipal liability in Barney versus Pulsifer, and that's... The site to that is 143 F 3rd 1299, and that's footnote five. The should have known standard, an objective standard, this court has actually adopted an objective standard for deliberate indifference in the context of municipal liability. Do you have further questions, Judge Carson? I don't, thank you. Thank you. Judge Matheson, do you have any further questions? No, thank you. Thank you, counsel. Thank you. I guess Mr. Snyder is first, rapidly. Yes, Your Honor. This is Sean Snyder on behalf of Armor Correctional Health Services, as well as Dr. Curtis McElroy, Patricia Dean, LPN, and Kathy Lohr, a licensed mental health professional. I'm gonna try to go a little bit and allow Mr. Snyder the opportunity to speak on behalf of the sheriff separately. But to begin with, without a doubt, plaintiff's complaint alleges that the defendant health care providers knew of and were treating Mr. Pratt for alcohol withdrawal at the Tulsa County Jail. As Mr. Blakemore just a moment ago had said, DT's is actually a form of alcohol withdrawal. It's just on the far end of the spectrum. Anyways, not only were the health care providers treating the symptoms and complaints related to his alcohol withdrawal, they actually recognized he was likely suffering from alcohol withdrawal. They then implemented a course of treatment targeting not just the symptoms he was exhibiting, but the actual condition he allegedly had. As for the alleged deprivation, plaintiff complains that more frequent monitoring should have been made. But more importantly, the real crux of her claim is that the defendants failed to transfer Mr. Pratt to a hospital to get ER level care. Of course, she fails to allege what additional treatment would have been provided in a hospital setting versus the medical unit at the Tulsa County Jail. According to her complaint, while at the Tulsa County Jail, the health care providers assessed him multiple times, implemented alcohol withdrawal protocols, and initiated treatment while monitoring him in the medical unit. He was ordered to be given Librium, a sedative used to treat patients going through alcohol withdrawal. As his symptoms worsened, the defendants changed his medication to Valium, a stronger sedative used to treat patients going through alcohol withdrawal. Plaintiff does not allege that the medical providers at the Tulsa County Jail were unqualified to treat a patient going through alcohol withdrawal. Plaintiff does not even allege that the resources, equipment, or specialists necessary to treat a patient going through alcohol withdrawal. Plaintiff merely alleges that Mr. Pratt may have been suffering a more severe form of alcohol withdrawal, therefore he needed to be at a hospital. Disagreements about the location of the treatment received, so long as the treatment is tailored to the medical need, is not a constitutional deprivation. Disagreements with how assessments are performed, when vital signs are taken, and what specific medication should be given sound in and not a constitutional deprivation. The plaintiff did not allege the defendants ignored Mr. Pratt's symptoms or that they refused to treat his alcohol withdrawal. She merely claims they didn't treat his alcohol withdrawal the way they should have. She alleged that he deserved more and better care. Those allegations alone are insufficient to state a claim for relief based on the substantive due process clause of the 14th Amendment. As such, the district  upon which relief could be granted and dismissed the claims as to all parties. Counselor, this is Judge Hart. So, as I understand you, you're not disputing that the complaint adequately alleges DTs. Is that, that's not your, that's not the focus of your defense. Is that correct? Well, I think that the complaint adequately alleges alcohol withdrawal, which was recognized, diagnosed, and agreed to. What about DTs? The argument seems to be that once you've, once you've started suffering the symptoms of DTs beyond alcohol withdrawal, then it's just absolutely, by the book, send the person to an emergency room in the hospital. So, I'd like to divide up the two issues. Well, and I... Does it adequately allege that there is sufficient evidence of DTs? Are you challenging that? I am, Your Honor. I think based off the allegations, including the diagnosis that the plaintiff alleged was given at St. John's Medical Center, which does not include DTs as a medically diagnosed condition that this patient had, that extreme form of alcohol withdrawal was not possible to occur, according to plaintiff's allegations in her complaint. Well, but the question is whether the symptoms were so obvious that any reasonable person who was not being deliberately indifferent would have recognized DTs. Well, in this instance where the DTs is on the spectrum of one another, and so it is a condition contained within a broader condition that was being treated. The treatment is the same, and they don't allege the treatment is any different, other than the setting in which they claim the treatment should have occurred. And I think as we've all come to learn recently, the setting or the situs of treatment is far less important than the quality as well as the specific treatments you're getting. It doesn't matter if you're being treated in a hospital or a medical unit. Okay, so you're going to the second step, that even if there were DTs, he has not alleged why that required transfer to a hospital given the resources and expertise at the hospital. In the medical unit at the Tulsa County Jail, Mr. Pratt was under the care and treatment of nurses, licensed mental health professionals, as well as a physician. He hasn't alleged that he would have received any further or additional treatment had he been transported to an ER care setting, where as we all know, an ER care setting may just be seen by a physician's assistant, a nurse practitioner, some mid-level provider, let alone a Dr. McElroy, which he was actually being treated by in the medical unit at the jail. And with that... Judge Matheson, do you have questions? Yes, just a follow-up on the line of questions that Judge Hartz is asking and your answers. As I was listening to your arguments, you're making more appropriate to a summary judgment procedural context, as opposed to where we are right now with a motion to dismiss. We have to take the allegations of the complaint as true, try inferences in favor of those allegations, and right now we're talking about whether the jail was adequate, or did they really need to go to the hospital, and where on the spectrum, and it just seems to me we're getting into fact questions that would be more appropriate at the summary judgment stage. Can you address that? Sure, and I think the district court addressed it in its opinion and order when it said the facts taken as true indicate that Mr. Pratt received medical treatment, although they challenged the efficacy of it. And that's the issue, is that the treatment was rendered according to the plaintiff. They just disagree with what it was for the condition, but the treatment was, the patient was being treated for the condition alleged by the plaintiff throughout, and what level to which that treatment was given is not a question for a constitutional deprivation claim such as this. That's a good question for a negligence claim, but not for a claim such as this. And to allow my co-counsel, Mr. Fortney, the opportunity to speak, I would pass the time on to him if that's okay. Okay. Judges, this is Guy Fortney. May I proceed? Yes, you may. All right. It's an honor to be here, or not here, and on the telephone, I guess. I represent the sheriff for Tulsa County, Sheriff Greg Olotto, who is sued only in his official capacity in this matter. As we all know, official capacity liability rises only when there's an underlying constitutional violation. As the district court correctly found in this case, plaintiff has not sufficiently pled facts which would give rise to the constitutional violation. And if I could, I'd like to address Judge Hart's, your your issue with regard to the, whether there was a diagnosis of DTs. It's plain from the complaint, a diagnosis of delirious tremens was never reached with regard to Mr. Pratt. Paragraph 21 of Plaintiff's complaint, and it's on page 5 of their brief, they conclude that the assessment indicated that he was suffering from delirious tremens. They don't cite anywhere in the record that anybody else concluded that he did. They then go on to cite some out-of-circuit cases that suggest that it's a serious medical need, one suggesting that it's a serious medical need that requires immediate hospitalization. But what they're only, the only thing that they're doing is taking issue with the conclusions reached by the individuals who were present giving treatment on that day. That's a classic, not a civil rights case. That is just taking issue with the decisions made in light of what they were, they were seeing, the assessments and how they treated him, and not any knowledge or deliberate indifference to his medical need. So, let me interrupt you. Judge Carson may ask questions on any issue. I assume when you divide your time, you both realize that you need to be prepared on all the issues. So, Judge Carson, if you have any questions. I don't have any. Thank you. Okay. So, with regard to the DTs, there is no diagnosis of DTs. As counsel said, plaintiff's counsel said, it is along the continuum, and that conclusion was never reached by the healthcare providers, and they were never indifferent to his medical need, whether it was for counsel. Counsel, this is Judge Mathison. You mentioned paragraph 21 of the complaint, but paragraph 22 alleges this, to any moderately trained medical professional, it would be obvious that Mr. Pratt was suffering from delirium tremens. Doesn't the court have to accept that as a correct statement? I think it's conclusory, because they don't, in my view, they don't show that this is a fact. This is just merely conclusory language by them to support their case. In these type of cases of deliberate indifference, you have to have some knowledge and awareness. And the record, as reflected in the complaint, shows awareness of his condition and treatment at every turn, whether it was for an injury to his head or for his alcohol detoxing. I thought it was interesting, and Judge Carson asked a question about if we were to go for Kingsley, is this just negligence? I think we have to remind ourselves that even Kingsley stated that liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. I don't think in this case we need to wrestle with that standard at this time because of the timing of this case. Well, Kingsley was decided in June 22nd of 2015, it was published, that this case occurred in December of 2015. How does that make any difference? It's the law. If we're not worried about qualified immunity, then I don't understand why the fact that Kingsley postdated the events makes any difference. Because you still have to find, in my view, a constitutional violation to give rise to official capacity liability. And if the standard at the time is deliberate indifference, then there can be no constitutional violation. Kingsley is limited, at least according to the case itself, to excessive force issues. If we're going to broaden that, and certainly there's ongoing debates and discussions throughout many circuits, there just isn't any notice to these individuals, and it certainly didn't exist as a constitutional violation at the time. And that's why I say I don't think we have to reach Kingsley in this case at this time. Okay, counsel. Judge Matheson, did you have further questions? Nothing further. Do you still have some time, counsel? Sure. I did want to point out that with regard to the obvious signs of DTs, that these individuals were assessing. This isn't a case where somebody wasn't observed, wasn't brought into the medical unit. Observations were made, and conclusions were reached, and treatment was given on this. This stands apart from a lot of deliberate indifference cases where you can show that there is a need that they're aware of that's going untreated. So I think the district court was proper in its determination that this case did not meet the standard as expressed in Redmond v. Crowther, 882 F. 3rd 927, that says the subjective prong is only met if prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. There simply isn't any alleged fact that any medical provider intentionally denied or delayed access or intentionally interfered with the treatment once prescribed. Appellant doesn't even address the standard in Redmond v. Crowther, just complains that it's too narrow. The court followed existing law and found this case correctly. We ask that the decision be affirmed. Thank you, counsel. I think my time has expired. Yes. I didn't hear the bell, though. I didn't either, but I had my watch on, so... And Mr. Wyman, do you have more time? I still show him with 15 seconds, Your Honor. Oh, okay. Very good. Well, I'll rest where I'm at. Mr. Wyman, does Appellant have any more time? He does not, Your Honor. In fact, he's over 45 seconds at this time. Okay. Well, I'm going to give him 30 seconds. Things get confused here, and time gets used up quickly. Mr. Blakemore, do you have something very brief to point out in response to the argument by Appellee? Yes. I do think that the argument that has been given today by the Appellees is very fact, evidence, intrinsic. And I do think it highlights the reason why there's a different standard for 12B6 versus Rule 56. And we should be... I think, again, we've plausibly alleged deliberate indifference. And to the extent we should be given the opportunity to conduct discovery and develop the factual record. Thank you. Thank you, Counsel. Thank you, Counsel. Case 1950-71 is submitted. Counsel are excused.